UNITED STATES of America, Appellee,

v.

Horacio ALVARADO,
Defendant–Appellant.

No. 162, Dockets 88–1303(L), 88–1420.

United States Court of Appeals,
Second Circuit.

Argued Oct. 5, 1989.

Decided Dec. 7, 1989.

**440**

Abraham L. Clott, New York City (The Legal Aid Society, New York City, on the brief), for defendant-appellant.

Frank J. Marine, U.S. Dept. of Justice, Washington, D.C. (Andrew J. Maloney, U.S. Atty., Brooklyn, N.Y.; Alan M. Friedman, U.S. Dept. of Justice, Washington, D.C., on the brief), for appellee.

Before NEWMAN, PRATT, and MAHONEY, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal concerns primarily the implementation of the holdings in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *McCray v. Abrams*, 750 F.2d 1113 (2d Cir.1984), *vacated and remanded*, 478 U.S. 1001, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986), *appeal dismissed*, No. 84-2026 (2d Cir. Oct. 23, 1986), proscribing a prosecutor's use of peremptory challenges on the basis of race or other impermissible categories. Horacio Alvarado appeals from the September 29, 1988, judgment of the District Court for the Eastern District of New York (John R. Bartels, Judge) convicting him, after a jury trial, of extortion and conspiracy to commit extortion, in violation of 18 U.S.C. §§ 1951–1952 (1982 & Supp. V 1987), and sentencing him to a three-year term of imprisonment and a four-year term of probation. Alvarado, who is described by his counsel as half Black and half Puerto Rican, contests as discriminatory the Government's use of its peremptory challenges against Blacks and Hispanics and also seeks resentencing on the ground that the District Court did not make clear whether an unresolved factual dispute influenced its sentence. For reasons set forth below, we affirm.

**1. Peremptory challenges**

Jury selection was conducted before a magistrate without objection, a practice we have recently approved. *See United States v. Vanwort*, 887 F.2d 375, 382–83 (2d Cir.1989). The jury was chosen using the "jury box" system, with challenges exercised in "rounds." *See United States v. Blouin*, 666 F.2d 796 (2d Cir.1981). In round one, the prosecution used its challenge against a Black, William Clark; in round two, against a White; in round three, against an Hispanic, Mario Garcia; in round four, against a Black, Essie Callier; in round five, the challenge was waived; and in round six, against a White. In the selection of the three alternates, the Government used its one challenge against a Black, Sondra Brown.

At that point, counsel for Alvarado asked the Magistrate to require the prosecution to state its reasons for using four of its challenges against Black and Hispanic members of the venire. The prosecution's initial reply disputed the existence of a *prima facie* case of discriminatory use of peremptory challenges sufficient to require a statement of reasons. The prosecutor pointed out that in selecting the jury of 12,

only three of six challenges had been used against minority members of the venire and that at the time a challenge was waived in the fifth round, two Hispanics and one Black were seated in the jury box, available to be challenged. The Magistrate then said he would afford the prosecutor an opportunity to state reasons "[i]f you wish to say anything," whereupon the prosecutor said that he was willing to respond but thought that a "finding" had to be made before the Government was obliged to state reasons. The Magistrate replied that "if you wish … to explain I think it would be quite helpful of [sic] finding in this particular case" but made clear that no reasons were being required: "I'm giving you the opportunity to explain any of your challenges. I'm giving you that opportunity if you choose that's your prerogative."

The prosecutor then volunteered reasons for the four minority challenges: Clark was challenged because his youth and lack of experience made him an inappropriate candidate for foreman, which the prosecutor assumed he would become by virtue of his being juror number one; Garcia was challenged because his lack of fluency in English caused concern that he might have difficulty understanding tape recordings; Callier was challenged because, with children the age of the defendant, she might be unduly sympathetic; Brown was challenged because she was a social worker.[1]

After hearing these explanations, the Magistrate rejected defense counsel's complaint about the prosecutor's use of peremptory challenges, but the ruling left it unclear whether the Magistrate was determining as a matter of law that the defense had failed to establish a *prima facie* case of discriminatory use of challenges or was determining as a matter of fact that a discriminatory use of challenges had not occurred. First, the Magistrate accepted the prosecutor's explanations for the challenges to Clark and Brown. No explicit finding was made concerning the explanations for the challenges to Garcia and Callier. Then, seeming to reject a *prima facie*

case as a matter of law, the Magistrate referred to the defendant's "initial burden" to "show a pattern … of conduct to exclude minority members" and said "there is no pattern." However, seeming to rule on the ultimate issue as a matter of fact, the Magistrate also stated that "the government has explained itself in sufficient detail for me to make the following findings without hesitation" and concluded that "there was not an intent to make or deprivation of a right to a jury trial by peers."

The jury of twelve as empaneled included one Black and two Hispanics.

■ When a defense counsel contends that a prosecutor is exercising peremptory challenges in violation of the Equal Protection Clause, the initial issue for the judge is whether a *prima facie* case of discrimination has been shown. *Batson v. Kentucky,* 476 U.S. at 93–96, 106 S.Ct. at 1721–23. To make a *prima facie* showing of discriminatory peremptory challenges, a defendant must demonstrate that members of his or her cognizable racial group were excluded from the jury and that the facts are sufficient to support an inference of purposeful racial discrimination.

[T]he defendant first must show that he is a member of a cognizable racial group, *Castaneda v. Partida,* [430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977)], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." *Avery v. Georgia,* [345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953)]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

---

**1.** The transcript, which is frequently garbled, attributes this explanation to the Magistrate, but the phrasing of the explanation makes it clear that it was the prosecutor who was speaking.

*Batson v. Kentucky,* 476 U.S. at 96, 106 S.Ct. at 1723.

As the proceedings in the instant case reveal, confusion sometimes arises as to what is meant by *"prima facie* case" in this context and what procedure should be followed in ascertaining whether such a case has been presented. Normally, *"prima facie* case" means a presentation of evidence that suffices as a matter of law to warrant submission of an issue for decision by the trier of fact. 9 J. Wigmore, *Evidence* § 2494 (J. Chadbourn rev. ed. 1981). In the context of determining the existence of discriminatory intent, however, *"prima facie* case" has a different meaning. In this setting, as the Supreme Court explained in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the phrase means presentation of evidence sufficient to establish what the Court called "a legally mandatory, rebuttable presumption," *id.* at 254 n. 7, 101 S.Ct. at 1094 n. 7. The Court used this somewhat cumbersome phrase to convey the idea that where the evidence suffices to establish a *"prima facie* case" of discriminatory intent, the party claiming the existence of such intent is entitled to prevail if (a) the fact-finder believes the claimant's evidence and (b) the party resisting the claim offers no evidence. *Id.* at 254, 101 S.Ct. at 1094. The difference between the traditional and the special meanings of *"prima facie* case" is subtle: With the former, the fact-finder first decides whether to credit the claimant's evidence of the underlying facts and then is entitled to, but need not, draw the inference of the ultimate fact sought to be proved by the claimant; with the latter, the fact-finder determines only whether to credit the claimant's evidence of the underlying facts that give rise to the presumption but performs no fact-finding on the ultimate fact of discriminatory intent, since, where the conditions for the presumption are met, the claimant wins.[2]

■ Once a *prima facie* case in this special, or "presumption" sense, has been established, the burden shifts to the party opposing the claim of discrimination to offer legitimate, non-discriminatory reasons for the challenged acts. If that opposing party carries this burden of production and raises a genuine issue of fact as to whether it acted with discriminatory intent, the trier of fact must then decide, with the burden of persuasion on the claimant, the ultimate issue of discrimination.

When the Supreme Court described the elements of a *"prima facie* case" in the context of a claim of discriminatory use of peremptory challenges, it was using the phrase in the "presumption" sense. This is apparent from footnote 18 of *Batson,* which explained that the "decisions concerning 'disparate treatment' under Title VII of the Civil Rights Act of 1964 have explained the operation of prima facie burden of proof rules." 476 U.S. at 94 n. 18, 106 S.Ct. at 1721 n. 18. (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine, supra;* and *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)).[3]

2. The reason the claimant wins is that the existence of a *prima facie* case in the special or "presumption" sense of the term makes it "more likely than not" that the unexplained circumstances were in fact brought about by intentional discrimination. *See Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

3. The operation of burden of proof rules in the context of a claim of discriminatory use of peremptory challenges is put in some doubt by the Court's statement that, after a *prima facie* case is presented, the party opposing the claim must *"demonstrate* that 'permissible racially neutral selection criteria and procedures have produced the monochromatic result.'" *Batson v. Kentucky,* 476 U.S. at 94, 106 S.Ct. at 1721 (quoting *Alexander v. Louisiana,* 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972) (emphasis added). Though the use of the word "demonstrate" might be thought to oblige the party opposing the claim to *persuade* the trier of fact that non-racial considerations were used, the Court dispelled this interpretation by stating elsewhere that the only burden shifted to the prosecutor is "to come forward with," *id.* at 97, 106 S.Ct. at 1723, and "to articulate," *id.* at 98, 106 S.Ct. at 1724, its nonracial explanation. The Court also emphasized that "[t]he party alleging that he has been the victim of intention-

■ Where, as in this case, the judge serves as the trier of fact, the role of the judge as determiner of a *prima facie* case is easily confused with the role of the judge as fact-finder on the ultimate issue— whether the prosecutor used peremptory challenges on a discriminatory basis. Confusion also arises because the threshold decision concerning the existence of a *prima facie* case of discriminatory use of peremptory challenges involves both issues of fact and an issue of law. The judge, as trier of fact, must determine whether the claimant (here, the criminal defendant) has proved by a preponderance of the evidence those underlying facts on which the claimant relies to raise a presumption that the prosecutor used peremptory challenges in a discriminatory manner. These facts concern the racial identities of those challenged and those available for challenge by the prosecutor and the racial composition of the venire and the community. If the claim is based on challenges used against a group that is not obviously a "cognizable class" within the meaning of our decision in *McCray*, this preliminary fact-finding must also resolve the existence of such a class. Once this preliminary fact-finding has been done, the judge must then determine, as a matter of law, whether these underlying facts suffice to establish a *prima facie* case.

In this case, the prosecutor correctly informed the Magistrate of the need to determine whether the defendant had carried his initial burden of presenting a *prima facie* case before the prosecutor could be obliged to state reasons for his challenges. However, the prosecutor was incorrect in inviting the Magistrate at that point to make a "finding," if by that term he meant a finding on the ultimate factual issue of discriminatory intent. Moreover, the Magistrate was incorrect to pretermit the determination of a *prima facie* case and leave it to the prosecutor's "prerogative" to offer explanations. In a proper *Batson* hearing, if the Magistrate was satisfied that the defendant had presented a *prima facie* case,

at that point the burden would have shifted to the prosecutor to offer neutral explanations for challenging the jurors. *Batson v. Kentucky*, 476 U.S. at 97, 106 S.Ct. at 1723. Then the Magistrate should have made findings as to the legitimacy of the explanation offered by the prosecutor with respect to each challenged minority member of the venire. In outlining the allocation of burdens in a *Batson* hearing, we do not rule out the possibility that where a judge has ascertained that a *prima facie* case of discrimination has not been shown, a prosecutor, to protect an ensuing conviction in the event the threshold determination is rejected on appeal, may nevertheless elect to state explanations and invite the judge to assess their legitimacy. If the judge, as fact-finder, then concludes that no discrimination occurred, the prosecutor would have two grounds on which to defend the jury selection on appellate review.

On appeal, the parties join issue as if the Magistrate had ruled solely with respect to the existence of a *prima facie* case. The appellant contends that such a case was established, relying on the fact that, of the six challenges exercised by the prosecutor, four were used against minority members of the venire. In response, the Government contends first, that Hispanics are not a cognizable racial group under *Batson*. Next, the Government asserts that a *prima facie* case was not shown. In making this point, the Government, reflecting the confusion that occurred during jury selection, argues both that the pattern of exercising challenges did not create a *prima facie* case of discrimination and that the prosecutor's explanations had dispelled any basis for an ultimate finding of racial bias.

■ We reject the Government's preliminary assertion that Hispanics are not a cognizable group for the purpose of assessing claims of discriminatory use of peremptory challenges as well as its subsidiary assertion that a defendant must affirmatively establish in each case that Hispanics constitute such a group. These positions

al discrimination carries the ultimate burden of persuasion." *Id.* at 94 n. 18, 106 S.Ct. at

1721 n. 18.

are untenable after our decision in *McCray.* There we affirmed the District Court's ruling that the defendant had proved a *prima facie* case of discriminatory peremptory challenges against Black and Hispanic venire members. 750 F.2d at 1133. Implicit in our holding was the view that Hispanics constitute a cognizable group, a fact that the defendant had not been required to establish when challenging their exclusion from the jury. *See United States v. Chinchilla,* 874 F.2d 695, 698 (9th Cir.1989); *United States v. Gerena,* 677 F.Supp. 1266, 1275 (D.Conn.1987); *see also United States v. Biaggi,* 853 F.2d 89 (2d Cir.1988) (Italian–Americans), *cert. denied,* — U.S. —, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989); *cf. Castaneda v. Partida,* 430 U.S. 482, 495, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977) (underrepresentation of Mexican–Americans sufficient to establish *prima facie* case of discrimination in grand jury selection). Though issues may arise as to whether a particular individual is properly included within the category of "Hispanics," the classification has sufficient cohesiveness to be "cognizable" for jury discrimination claims. Indeed, it is somewhat surprising that the Executive Branch, which uses the term "Hispanic" and similar categories in implementing anti-discrimination standards, *see* 29 C.F.R. § 1607.4 (EEOC's use of category "Hispanic" in evaluating selection procedures under Title VII); *cf.* 13 C.F.R. § 317.2 (1989) (using term "Spanish-speaking" for minority business enterprises "set-aside" program), should disclaim the pertinence of the category "Hispanic" in the context of jury selection. *See United States v. Yonkers Contracting Co.,* 682 F.Supp. 757, 763 (S.D.N.Y.1988).

Whether Alvarado actually established a *prima facie* case is a closer question. In *Batson,* the Court indicated that evidence of a "pattern" of strikes against members of a cognizable racial group can give rise to an inference of discrimination. 476 U.S. at 97, 106 S.Ct. at 1723. Alvarado contends that such a pattern was established here because, of the six challenges used by the prosecutor, four were used against venire members who were Black or Hispanic. Appellant views this as a rate of minority challenges of 67 percent, which he asserts is considerably higher than the minority percentage of the venire. However, since the prosecutor waived one challenge at a point where minority venire members were available for challenge, it is more pertinent to note that the challenge rate was 57 percent (four of seven) against all venire members and 50 percent (three of six) in the selection of the jury of twelve prior to the selection of alternates. The record does not disclose the minority percentage of the venire, but we may take judicial notice that the minority percentage of the Eastern District of New York, from which the venire was drawn,[4] is 29 percent.[5] *Batson's* citation of *Castaneda v. Partida,* 476 U.S. at 96, 106 S.Ct. at 1723, indicates that statistical disparities are a relevant factor in making a *prima facie* case, although a statistical disparity based on numbers as small as those normally involved in peremptory challenges is not as significant as those occurring in employment contexts where normally a larger universe is analyzed.[6]

■ In this case, we need not determine whether this rate of minority challenges establishes a *prima facie* case of discriminatory peremptory challenges. The issue we face on appeal from a conviction is

**4.** Under the Jury Selection Plan of the Eastern District, as used at the time Alvarado's jury was selected, jurors summoned for service at Brooklyn were drawn from throughout the District. An amended plan, adopted January 21, 1988, provides that jurors will not be summoned for service at Brooklyn from Suffolk and Nassau Counties, but this amended plan has not yet been put into practice because of judicial vacancies.

**5.** This percentage is derived from the figures for the total populations and the Black and Hispanic populations of each of the counties of the Eastern District. Bureau of the Census, *Statistical Abstract of the United States* (108th ed. 1988).

**6.** *See* D. Baldus & J. Cole, *Statistical Proof of Discrimination* § 9.1 (1980 & Supp.1987); Kaye, *Statistical Evidence of Discrimination in Jury Selection,* in *Statistical Methods in Discrimination Litigation* (D. Kaye & M. Aickin eds. 1986).

different from the one faced by a judicial officer in the course of jury selection. Under *Batson*, the judicial officer must determine whether a *prima facie* case is established and, if so, whether the prosecutor's subsequent explanations adequately rebut the presumption that the government used its challenges in a discriminatory way. Upon a finding of discrimination, the judicial officer should promptly take corrective action before jury selection has been completed. *McCray v. Abrams*, 750 F.2d at 1132 ("If the court determines that the prosecution's presentation is inadequate to rebut the defendant's proof, the court should declare a mistrial and a new jury should be selected from a new panel.") As we emphasized in *Roman v. Abrams*, 822 F.2d 214 (2d Cir.1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 1311, 103 L.Ed.2d 580 (1989), "[I]t is incumbent upon the trial judge to apply the *McCray* Sixth Amendment principles *during the jury selection process*, and to grant the defendant an appropriate remedy when a *prima facie* case has been made of the prosecutor's racially discriminatory use of peremptory challenges and the state has not successfully rebutted that case by presenting creditable race-neutral reasons for the challenges." *Id.* 109 S.Ct. at 229 (emphasis added).

■ However, our task in assessing a claim of discriminatory use of peremptory challenges on appeal from a conviction is to determine whether the group alleged to have been impermissibly challenged is "significantly underrepresented" in the jury that convicted the appellant. *Id.* In the absence of such underrepresentation, the Sixth Amendment right to the unimpeded possibility that the jury will be a fair cross-section of the community has not been violated. That was the holding in *Roman v. Abrams*, where we declined to disturb a conviction because no significant underrepresentation occurred. Arguably, this "bottom-line" approach is more appropriate for Sixth Amendment "fair cross-section" claims than for equal protection claims, but we do not believe that the distinction is warranted in the assessment of the use of peremptory challenges. *See United States*

*v. Biaggi*, 673 F.Supp. 96, 107 (E.D.N.Y. 1987), *aff'd*, 853 F.2d 89 (2d Cir.1988); *cf. Connecticut v. Teal*, 457 U.S. 440, 450, 102 S.Ct. 2525, 2532, 73 L.Ed.2d 130 (1982) (rejecting bottom-line analysis under Title VII). We recognized in *McCray* and *Roman* that the prosecutor's unwarranted exclusion of cognizable groups should be remedied on the spot, without waiting to see the ultimate composition of the jury. That assures a defendant that discriminatory use of peremptory challenges will be prohibited even in those cases where a fair cross-section might have resulted without prompt corrective action. In those few instances where corrective action should have been taken but was not, either because the judicial officer improperly failed to identify a *prima facie* case or improperly accepted insubstantial explanations from the prosecutor, we do not believe that the incremental benefit of enforcing *Batson* and *McCray* by vacating convictions obtained with fairly representative juries is warranted.

■ Here, Blacks and Hispanics constituted 25 percent of the jury, approximating their percentage in the Eastern District of 29. Applying *Roman v. Abrams*, we see no basis for disturbing the conviction. In view of this conclusion, we need not consider the Magistrate's subsidiary findings made with respect to two of the prosecutor's explanations nor the ultimate finding, based on the entire record of the jury selection process, that no discrimination was established.

2. *Sentencing.*

■ Alvarado also claims that the District Court relied on disputed facts to enhance his sentence, arguing that the presentence investigation report erroneously suggested that he caused damage to the construction site. The record shows, however, that the controverted matter did not influence the judge's sentence. The District Court disclaimed reliance upon this suggestion in the presentence investigation report, stating at one point, "I don't have to decide [whether the defendant caused the damage]." Since this issue was not

taken into consideration, the District Court did not have to make a specific finding as to the allegations of factual inaccuracy in the report. We conclude that the sentence is valid.

The judgment of the District Court is affirmed.