**UNITED STATES of America, Appellee,**

v.

**Horacio ALVARADO,
Defendant–Appellant.**

No. 162, Dockets 88–1303(L), 88–1420.

United States Court of Appeals,
Second Circuit.

Submitted Aug. 22, 1990.

Decided Jan. 16, 1991.

Abraham L. Clott, The Legal Aid Soc., New York City, submitted a letter brief, for defendant-appellant.

Frank J. Marine, Sp. Counsel, Organized Crime Section, U.S. Dept. of Justice, Washington, D.C., submitted a letter brief, for appellee.

Before NEWMAN, PRATT and MAHONEY, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal, alleging that a prosecutor used peremptory challenges in a discriminatory manner, is before us on remand from the Supreme Court. The appeal is brought by Horacio Alvarado from a judgment of the District Court for the Eastern District of New York (John R. Bartels, Judge) convicting him, after a jury trial, of extortion and conspiracy to commit extortion, in violation of 18 U.S.C. §§ 1951, 1952 (1988). Alvarado, who is described by his counsel as half Black and half Puerto Rican, contests as discriminatory the Government's use of peremptory challenges against Blacks and Hispanics. On our prior consideration, *United States v. Alvarado*, 891 F.2d 439 (2d Cir.1989) (*Alvarado I*), we did not rule on whether the appellant had presented in the District Court a *prima facie* case of discriminatory use of peremptory challenges, sufficient to require the prosecutor to provide nondiscriminatory explanations, *see Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), or whether the partial explanations volunteered by the prosecutor were sufficient. Instead, we ruled that Alvarado's claim warranted no appellate relief because the jury ultimately empaneled adequately reflected the Black and Hispanic population of the Eastern District.

In response to Alvarado's petition for a writ of certiorari, the Solicitor General suggested to the Supreme Court that we had erred in rejecting the *Batson* challenge on the basis of the ultimate composition of the jury, but nevertheless urged that certiorari should be denied because Alvarado had failed to establish a *prima facie* case of discrimination and because the prosecutor's volunteered reasons were race-neutral. In a 5–4 decision, the Supreme Court granted the petition, vacated our judgment, and remanded "for further consideration in light of the position asserted by the Solicitor General." [1] *Alvarado v. United States*, — U.S. —, 110 S.Ct. 2995, 2996, 111 L.Ed.2d 439 (1990).

In giving the case reconsideration, we note that the Solicitor General appears to have misunderstood our opinion. He seems to have believed that we thought that the "equal protection analysis [of *Batson*] would be inapplicable to a case in which the defendant's jury mirrored the community." *See* Brief for United States in Opposition to Petition for Writ of Certiorari at 12, *Alvarado v. United States, supra* (No. 89–6985). On the contrary, we thought the *Batson* equal protection analysis was very much applicable and emphasized the obligation of the judicial officer supervising the jury selection to enforce its requirements. *Alvarado I*, 891 F.2d at 445. Our point was that in those rare cases where the corrective action required to be taken by *Batson* during jury selection is not taken, the incremental benefit of enforcing *Batson* by reversing convictions obtained with fairly representative juries was not warranted. *Id.* Nevertheless, we recognize that it is now prudent to focus our reconsideration upon the two issues that the Supreme Court recognized we did not reach in our prior opinion—whether appellant established a *prima facie* case of intentional discrimination and whether the prosecutor gave adequate race-neutral explanations for the challenges against mi-

---

1. Interestingly, the Supreme Court did not follow the practice it customarily used in earlier days when acting in response to a confession of error by the Solicitor General. In the past, the Supreme Court has made its own independent determination of the issue on which the Solicitor General has disagreed with a court of appeals. *See Gibson v. United States*, 329 U.S. 338, 344 n. 9, 67 S.Ct. 301, 304 n. 9, 91 L.Ed. 331 (1946); *Young v. United States*, 315 U.S. 257, 258–59, 62 S.Ct. 510, 511–12, 86 L.Ed. 832 (1942); *see also DeMarco v. United States*, 415 U.S. 449, 451, 94 S.Ct. 1185, 1186, 39 L.Ed.2d 501 (1974) (Rehnquist, J., dissenting) ("It is well established that this Court does not, or at least should not, respond in Pavlovian fashion to confessions of error by the Solicitor General."); *Petite v. United States*, 361 U.S. 529, 533, 80 S.Ct. 450, 452, 4 L.Ed.2d 490 (1960) (Brennan, J., dissenting) ("Even where the Government confesses error, this Court examines the case on the merits itself...."). More recently, however, without assessing the issue for itself, the Court has remanded for reconsideration in light of the Solicitor General's position. *See Chappell v. United States*, — U.S. —, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990); *Biddle v. United States*, 484 U.S. 1054, 108 S.Ct. 1004, 98 L.Ed.2d 971 (1988); *Malone v. United States*, 484 U.S. 919, 108 S.Ct. 278, 98 L.Ed.2d 239 (1987).

nority members of the venire. *See Alvarado v. United States*, 110 S.Ct. at 2996.[2]

■ 1. Prima facie *showing of discrimination.* Jury selection was conducted before a magistrate without objection, a practice we have approved. *See United States v. Vanwort*, 887 F.2d 375, 382–83 (2d Cir. 1989), *cert. denied sub nom. Chapoteau v. United States*, —— U.S. ——, 110 S.Ct. 1927, 109 L.Ed.2d 290 (1990). The jury was chosen using the "jury box" system, with peremptory challenges exercised in "rounds." *See United States v. Blouin*, 666 F.2d 796 (2d Cir.1981). In round one, the prosecution challenged a Black, William Clark; in round two, a White; in round three, an Hispanic, Mario Garcia; in round four, a Black, Essie Callier; in round six, a White. In round five, the prosecution waived its challenge at a time when three minority members were seated in the jury box, available for challenge. In the selection of the three alternates, the prosecution used its one challenge against a Black, Sondra Brown.

Upon Alvarado's assertion of a *Batson* claim, the Magistrate, though not requiring explanations from the prosecution, afforded an opportunity to state reasons "[i]f you wish to say anything." The prosecution then volunteered reasons for the four minority challenges: Clark was challenged because his youth and lack of experience made him an inappropriate candidate for foreman, which the prosecution assumed he would become by virtue of his being seated as juror number one; Garcia was challenged because his lack of fluency in English caused concern that he might have difficulty understanding tape recordings; Callier was challenged because, with children the age of the defendant, she might be unduly sympathetic; Brown was challenged because she was a social worker, and might for that be reason be sympathetic. The Magistrate accepted the explanations as to Clark and Brown, but made no findings with respect to Garcia and Cal-

lier. Without clarifying whether he was finding that no *prima facie* case of discrimination had been established or that Alvarado had not prevailed on the ultimate issue of proving discriminatory intent, the Magistrate rejected the *Batson* claim.

Renewing his challenge in light of the Supreme Court's remand, appellant first contends that a *prima facie* case of discrimination was established. He points out that the prosecution used four of its seven challenges against minority members of the venire, with three out of six used to challenge minority members in selection of the twelve regular members of the jury. There is no indication that any of the prosecution's "questions and statements during *voir dire*," *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723, revealed evidence of discriminatory intent. Appellant urges us to consider at this point what he regards as the inadequate explanations offered by the prosecution for its challenges. However, the initial question is whether appellants presented a *prima facie* case sufficient to require explanations; that determination must be made before the explanations are considered.

*Batson*'s citation of *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), in connection with the assessment of a *prima facie* case, *Batson*, 476 U.S. at 96, 106 S.Ct. at 1722, indicates that statistical disparities are to be examined. Here, the prosecution's challenge rate against minorities was 50 percent (three of six) in the selection of the jury of 12, and 57 percent (four of seven) in the selection of the jury of 12 plus alternates. Whether this rate creates a statistical disparity would require knowing the minority percentage of the venire; for example, if the minority percentage of the venire was 50, it could be expected that a prosecutor, acting without discriminatory intent, would use 50 percent of his challenges against minorities. Only a rate of minority challenges significantly higher than the minority percentage of the venire would support a statistical inference of discrimination. We are

---

2. The Supreme Court's opinion leaves some ambiguity as to whether we may consider both the existence of a *prima facie* case and the adequacy of the prosecutor's explanations, or only the latter issue. In papers submitted at our invitation after the remand, both parties have agreed that both issues are properly before us.

not informed of the minority percentage of the venire in this case, but we may accept as a surrogate for that figure the minority percentage of the population of the Eastern District, from which the venire was drawn. That percentage is 29. *See Alvarado I,* 891 F.2d at 444 & n. 5.

■ We think a challenge rate nearly twice the likely minority percentage of the venire strongly supports a *prima facie* case under *Batson.* The Government opposes this conclusion, pointing to the prosecution's waiver of a challenge in the fifth round, when minority veniremen were in the jury box, subject to peremptory challenge. Though failure to exercise an available challenge against minority veniremen has been mentioned in the decisions of some courts finding no *prima facie* case of discrimination, *see United States v. Moore,* 895 F.2d 484, 486 n. 5 (8th Cir.1990); *United States v. Grandison,* 885 F.2d 143, 148 (4th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2178, 109 L.Ed.2d 507 (1990), the fifth round waiver here does not defeat a *prima facie* case. The discrimination condemned by *Batson* need not be as extensive as numerically possible. A prosecutor may not avoid the *Batson* obligation to provide race-neutral explanations for what appears to be a statistically significant pattern of racial peremptory challenges simply by forgoing the opportunity to use all of his challenges against minorities.

■ 2. *Adequacy of prosecutor's explanations.* The task of assessing the prosecutor's explanations, in order to determine the ultimate issue of whether discrimination has been shown, falls primarily upon the judicial officer conducting the jury selection, whose determinations as to the credibility of the proffered explanations are entitled to "appropriate deference." *Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. In this case, the Magistrate made findings that the prosecution's explanations were race-neutral as to Clark and Brown, but made no findings as to Garcia and Callier. We think the appropriate course is to remand for findings by the Magistrate as to Garcia and Callier and an ultimate determination on the issue of discriminatory intent based on all the facts and circumstances. *See United States v. Mitchell,* 877 F.2d 294, 303 (4th Cir.1989). An explanation for a particular challenge need not necessarily be pigeon-holed as wholly acceptable or wholly unacceptable. The relative plausibility or implausibility of each explanation for a particular challenge, assessed in light of the prosecution's acceptance of jurors with similar circumstances, may strengthen or weaken the assessment of the prosecution's explanation as to other challenges and thereby assist the fact-finder in determining overall intent. Moreover, as both sides acknowledge, the prosecution's decision not to use an available challenge against minority veniremen is also a relevant circumstance to be weighed.[3]

We appreciate that the Magistrate might encounter some difficulty recalling the circumstances of the jury selection and might conclude that examination of the record, supplemented by such further hearing on remand as he deems appropriate, may not yield a satisfactory basis for determining the prosecution's state of mind when the jury was selected. If he concludes that the passage of time has unduly impaired his ability to make a fair determination of the prosecution's intent, he may so state, in which event the District Court shall order a new trial. But if appropriate findings may conveniently be made, this should be done, with the District Court authorized then either to reinstate the judgment of conviction or order a new trial, depending upon the Magistrate's findings. *See United States v. Alcantar,* 897 F.2d 436 (9th Cir.1990) (disagreeing with District Court's conclusion on remand on the *Batson* claim and ordering new trial).

The judgment of the District Court is vacated, and the case is remanded for further proceedings consistent with this opinion.

---

**3.** We do not agree with the Government, however, that the fact that one of the two prosecutors is Black is a circumstance weighing against a finding of discrimination.