UNITED STATES of America, Appellee,

v.

Horacio ALVARADO, Defendant–Appellant.

No. 170, Docket 91–1266.

United States Court of Appeals, Second Circuit.

Argued Oct. 8, 1991.

Decided Nov. 14, 1991.

Abraham L. Clott, The Legal Aid Soc., New York City, for defendant-appellant.

Elizabeth A. Lesser, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., James Orenstein, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for appellee.

Before OAKES, Chief Judge, VAN GRAAFEILAND and NEWMAN, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal concerns a determination that a prosecutor's exercise of peremptory challenges against Black and Hispanic members of a jury venire was not racially motivated. Horacio Alvarado appeals from the March 27, 1991, order of the District Court for the Eastern District of New York (John R. Bartels, Judge), reinstating a judgment of conviction after Magistrate Judge John L. Caden, who had presided at the jury selection, upheld the peremptory challenges at a post-trial hearing conducted upon a remand from this Court. We affirm.

## Background

This case has had an eventful career. Alvarado was convicted at a jury trial of extortion and conspiracy to commit extortion, in violation of 18 U.S.C. §§ 1951, 1952 (1988). By agreement, jury selection, discussed in detail below, was conducted before a magistrate judge, *see United States v. Vanwort*, 887 F.2d 375, 382–83 (2d Cir. 1989), *cert. denied,* — U.S. —, 110 S.Ct. 1927, 109 L.Ed.2d 290 (1990). On the initial appeal, *United States v. Alvarado*, 891 F.2d 439 (2d Cir.1989) (*Alvarado I*), Alva-

rado contended that the prosecutor had used peremptory challenges in a discriminatory manner in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We affirmed without determining whether Alvarado had established a *prima facie* case of discrimination or whether the prosecutor had adequately furnished non-discriminatory reasons for the disputed challenges. Instead, we ruled that, though *Batson* fully applied to the jury selection process in the District Court, the incremental benefit of enforcing *Batson* by reversal of a conviction was not warranted in cases, like Alvarado's, where the jury ultimately empaneled reflected a fair cross-section of the community. *Alvarado I,* 891 F.2d at 445.

In response to Alvarado's petition for a writ of certiorari, the Solicitor General, apparently under the misapprehension that we had thought *Batson* wholly inapplicable to cases where the ultimate jury reflected a cross-section of the community, suggested to the Supreme Court that we had misapplied *Batson.* Nevertheless, he urged a denial of certiorari on the ground that Alvarado had not presented a *prima facie* case of discrimination and that, even if he had, the prosecutor's explanations were sufficient. The Supreme Court remanded for "further consideration in light of the position asserted by the Solicitor General." *Alvarado v. United States,* — U.S. —, 110 S.Ct. 2995, 2996, 111 L.Ed.2d 439 (1990).

On remand, we first ruled that Alvarado had established a *prima facie* case of discriminatory use of peremptory challenges. *United States v. Alvarado,* 923 F.2d 253, 255–56 (2d Cir.1991) *(Alvarado II ).* With respect to the sufficiency of the prosecutor's explanations, we noted that the Magistrate Judge had made findings with respect to only two of the four challenged members of the venire, William Clark and Sondra Brown. We therefore vacated the judgment and remanded to afford the Magistrate Judge an opportunity to make findings with respect to the other two challenged members of the venire, Mario Garcia and Essie Callier, if his memory sufficed for that purpose, and then to make

"an ultimate determination on the issue of discriminatory intent based on all the facts and circumstances." *Id.* at 256.

On remand to the District Court, the Magistrate Judge credited the prosecutor's non-discriminatory explanations for challenging Garcia and Callier and ruled that Alvarado had not sustained his burden of persuading that the prosecutor had acted with discriminatory intent. Based on these findings, Judge Bartels, acting within the scope of our remand, *Alvarado II,* 923 F.2d at 256, reinstated the judgment of conviction.

*The jury selection.* The jury was chosen using the "jury box" system, with challenges exercised in "rounds." The prosecution used its challenges against a Black, Clark, in round one; against an Hispanic, Garcia, in round three; against a Black, Callier, in round four; the challenge was waived in round five; and against a White in round six. In the selection of alternates, the prosecution used its one challenge against Brown, who is a Black. The prosecutor thus used four of his seven available challenges against minority members of the venire, though he waived a challenge at a point where two Hispanics and one Black were seated in the jury box, available to be challenged.

The prosecutor offered these reasons for the minority challenges: Clark because his youth and lack of experience made him an inappropriate candidate for foreman, which the prosecutor assumed he would become by virtue of his being juror number one; Garcia because his lack of fluency in English caused concern that he might have difficulty understanding tape recordings, which would be central to the Government's case; Callier because, with children the age of the defendant, she might be unduly sympathetic; and Brown because she was a social worker. Alvarado sought to persuade the Magistrate Judge that none of these explanations should be credited. As to Clark, he argued that the prosecutor should have known that Judge Bartels permitted the jury to select its own foreperson. As to Garcia, he ar-

gued that Garcia's voir dire testimony reflected a proficiency in English and gave no indication that he might have difficulty understanding taped conversations. As to Callier, he argued that the prosecutor had declined to challenge White members of the venire with children of an age similar to the defendant's. As to Brown, he argued that the prosecutor had declined to challenge a White man employed as a paraprofessional high school guidance counselor.

At the hearing on remand, neither side requested an evidentiary hearing, but relied on written submissions and oral argument. Defending the challenge of Clark, the Government contended that there was no evidence that the prosecutor had known of Judge Bartel's practice in selecting the foreperson. As to Brown, the Government argued that her role as a social worker made her a more suitable target for a challenge than the paraprofessional guidance counselor. As to Garcia, the Government cited some arguable language difficulty reflected in a portion of his voir dire responses. As to Callier, the Government acknowledged that it had not challenged other venire members with adult children but argued, rather lamely, that it had "other reasons" for challenging Callier.

The Magistrate Judge reiterated the findings he had previously made that the explanations for the challenges to Clark and Brown were accepted, and he specifically accepted the explanations for the challenges to Garcia and Callier. In addition, he noted that the prosecutor had waived a challenge at a point in the jury selection where three minority members were in the jury box available for challenge. Taking all the circumstances into consideration, the Magistrate Judge concluded that the explanations for the four challenges were "race neutral, plausible and nondiscriminatory" and that discriminatory intent had not been proven.

■ As we have recognized, the task of assessing the prosecutor's explanations, in order to determine the ultimate issue of whether discrimination has been shown, falls primarily upon the judicial officer conducting the jury selection, whose determi-nations as to credibility of the proffered explanations are entitled to "appropriate deference," *Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. *Alvarado II,* 923 F.2d at 256. The explanations as to Clark, Brown, and Garcia are heavily fact dependent, and deference to the Magistrate Judge's assessment is especially appropriate. As to Callier, the issue is closer. The force of a prosecutor's explanation for challenging a minority member of a venire is obviously weakened substantially by evidence that non-minority members to whom the same explanation applies were not challenged. *See Walton v. Caspari,* 916 F.2d 1352, 1361–62 (8th Cir.1990) (same occupation), *cert. denied,* —— U.S. ——, 111 S.Ct. 1337, 113 L.Ed.2d 268 (1991); *United States v. Chinchilla,* 874 F.2d 695, 698 (9th Cir.1989) (same place of residence).

■ Decisions in other circuits have observed that an explanation for a peremptory challenge, though weakened, is not automatically to be rejected simply because it applies to a non-minority venireperson who was not challenged. *See United States v. Lance,* 853 F.2d 1177, 1181 (5th Cir.1988); *United States v. McCoy,* 848 F.2d 743, 745 (6th Cir.1988); *United States v. Lewis,* 837 F.2d 415, 417 n. 5 (9th Cir.1988), *cert. denied,* 488 U.S. 923, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988). In these cases, however, the prosecutor had put forward other reasons, in addition to the trait shared with the unchallenged jurors, which enhanced the credibility of the prosecutor's explanation. *See, e.g., Lewis,* 837 F.2d at 417 n. 5 ("We recognize, however, that the decision whether to strike a venireman hinges upon the interplay of various factors and that no unchallenged juror possessed all the cited characteristics"). In the pending case, no factor other than the shared factor was advanced as to Callier at the initial hearing, and although the possibility of other factors was alluded to at the hearing after remand, none was specified. The after-the-fact invocation of unspecified "other factors" can add little credibility to a challenge whose stated reason, if applied evenly, would have caused the prosecutor to strike non-minority jurors.

As we noted on the prior appeal, "An explanation for a particular challenge need not necessarily be pigeon-holed as wholly acceptable or wholly unacceptable," *Alvarado II*, 923 F.2d at 256, and even where the acceptability of a particular explanation is doubtful, the inquiry is not at an end. In deciding the ultimate issue of discriminatory intent, the judicial officer is entitled to assess each explanation in light of all the other evidence relevant to prosecutorial intent. The officer may think a dubious explanation undermines the bona fides of other explanations or may think that the sound explanations dispel the doubt raised by a questionable one. As with most inquiries into state of mind, the ultimate determination depends on an aggregate assessment of all the circumstances. The explanation for striking Callier appears dubious, but the prosecutor was clearly entitled to be credited as to the other three explanations, and the ultimate finding of no discriminatory intent is supportable. The waiving of a challenge when minority venirepersons were available for challenge, though it provides no insulation from judicial scrutiny, is a factor that can lend some support to a finding of race neutral challenges. *See Chinchilla*, 874 F.2d at 698 n. 4; *United States v. Montgomery*, 819 F.2d 847, 851 (8th Cir.1987). We conclude that the ultimate finding of no discriminatory intent should not be disturbed.

The judgment of the District Court is affirmed.