**Arecio COLLADO, Petitioner,**

v.

**David MILLER, Superintendent, Respondent.**

**No. 00 CV 2422.**

United States District Court, E.D. New York.

July 2, 2001.

Barry Gene Rhodes, Brooklyn, NY, for Arecio Collado, petitioner.

David Camuzo, Attorney General of the State of New York, New York City, for David Miller, Superintendent, respondent.

*MEMORANDUM AND ORDER*

AMON, District Judge.

Petitioner Arecio Collado seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner contends that his conviction should be vacated because his trial jury was unconstitutionally selected under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Specifically, petitioner argues that the prosecutor impermissibly exercised his peremptory challenges during voir dire to exclude allegedly Hispanic jurors. For the reasons discussed herein, the petition is denied.

*Background*

Petitioner Collado, who is Hispanic, was indicted in 1996 in New York Supreme Court, Queens County, on multiple counts of arson in the first degree, conspiracy in the second degree, criminal mischief in the first degree, criminal possession of a weapon in the first degree, criminal possession of a weapon in the second degree, arson in the third degree, criminal possession of weapon in the third degree, criminal solicitation in the second degree, reckless endangerment in the first degree, and criminal possession of a weapon in the fourth degree.

During the selection of the four alternate jurors at petitioner's trial, defense counsel opposed the prosecution's use of a peremptory challenge to remove prospective juror Flora Restrepo pursuant to *Batson.* Counsel argued that the "record is clear that the People have been challenging peremptorily just about all if not all Hispanic surname[d] individuals," and requested that the prosecution be asked to articulate a reason for her removal other than the fact that she was Hispanic. (Voir Dire Tr. [hereinafter "Tr."] at 919.) The trial court declined to require the prosecution to respond, noting that, "[i]n the first instance, it must be a demonstration on

your part of certain circumstances which require me to call upon the People to give any response." (Tr. at 919–20.)

Defense counsel then attempted to bolster the *Batson* claim by arguing that "all of the Hispanic surnamed individuals consist of the majority of their peremptory challenges without any other basis. Certainly as to this lady here [Ms. Restrepo], Judge. She said absolutely nothing that would infer that she could not be a fair and impartial juror." (Tr. at 920.) The court again refused to ask the prosecution to explain its use of peremptory challenges because it had concluded that "no prima facie case of purposeful discrimination has been made out." (*Id.*)

In a final attempt to persuade the court, defense counsel proceeded to list the names of prospective jurors he believed were removed on a racial discriminatory basis:

MR. SCHIOPPI: ... In the preceding rounds: Mr. Cantrasias.[1] Mr. Altamari.

THE COURT: Altamari?

MR. SCHIOPPI: That's correct Judge. Ms. Blanco. Pintaro.

THE COURT: What was that name?

MR. SCHIOPPI: Pintaro (sic). Mr. Pintaro was the name.

THE COURT: Pintado (sic) was the name.

MR. SCHIOPPI: Excuse me, Judge. Ms. Sabone.[2]

THE COURT: If that isn't Italian, I don't know what is.

MR. SCHIOPPI: Thomas Corrado.

THE COURT: As well.

MR. SCHIOPPI: Judge, I believe that supports my contention. And the current juror being challenged is Ms. Restrepo.

(Tr. at 921.) After hearing the names, the court once again held that the defense had not made out a prima facie case of discrimination. (Tr. at 921–22.)

According to petitioner, at the time counsel asserted the *Batson* claim as to Ms. Restrepo, 94 members of the venire had been questioned. The prosecution had allegedly used six of seventeen peremptory challenges to remove certain of those prospective jurors who had what defense counsel contended were Hispanic surnames—Mr. Altamari, Ms. Blanco, Ms. Cervone, Mr. Contrera, Mr. Corrado, and Mr. Pintado.[3] At the time that Ms. Restrepo was dismissed, one Hispanic juror had apparently already been selected.

Petitioner was ultimately convicted after trial of four counts of criminal possession of a weapon in the first degree, five counts of criminal possession of a weapon in the second degree, three counts of criminal solicitation in the second degrees, and two counts of criminal possession of a weapon in the fourth degree. Of the twelve jurors who deliberated and convicted petitioner, two were apparently Hispanic, including Mr. Porfido, who had originally been one of the alternate jurors.[4] Petitioner was sentenced on July 31, 1996.

---

1. Actually Mr. Contrera.

2. Actually Ms. Cervone.

3. Eight jurors with Hispanic surnames had apparently been excused for cause by the court. At oral argument, respondent noted that defense counsel had also removed a number of individuals with apparently Hispanic surnames: Ms. Garcia, Ms. Rivera, Ms. Rodriguez, Ms. Mercado, Ms. Reyes, and Ms. Avilla. (*See* Affidavit of David Camuzo, dated Sept. 18, 2000, Ex. B., at 19 n. 20.)

4. Mr. Porfido was selected as an alternate after the defense made its *Batson* claim, and apparently ended up on the jury of twelve.

Petitioner appealed his conviction to the Appellate Division, Second Department, arguing, *inter alia,* that his trial jury had been unconstitutionally selected in violation of *Batson.* The Appellate Division affirmed his conviction on March 15, 1999, finding that the record did not support the *Batson* claim. *People v. Collado,* 259 A.D.2d 626, 687 N.Y.S.2d 645 (2d Dep't), *lv. to appeal denied,* 93 N.Y.2d 923, 693 N.Y.S.2d 506, 715 N.E.2d 509 (1999).

## Discussion

### I.  *Standard of Review*

■ Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 100 Stat. 1214 ("AEDPA"), federal courts must accord deference to the state court's determination of a habeas petitioner's federal constitutional claims on the merits. This Court thus cannot grant a petitioner's writ of habeas corpus unless the state court's ruling is "contrary to ... clearly established Federal law" or "involved an unreasonable application of ... clearly established Federal law." *Noble v. Kelly,* 246 F.3d 93 (2d Cir.2001) (per curiam) (quoting 28 U.S.C. § 2254(d)(1)); *see Williams v. Taylor,* 529 U.S. 362, 404–05, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Moreover, the Court must presume that any determination of fact made by the state court is correct. 28 U.S.C. § 2254(e)(1).

■ A trial court's determination of whether a defendant has demonstrated a prima facie case under *Batson* is a mixed question of law and fact. *Millan v. Keane,* 97 Civ. 3874, 1999 WL 178790, at *3 (S.D.N.Y. Mar. 31, 1999), *aff'd,* 208 F.3d 203 (2d Cir.2000) (citing *United States v. Alvarado,* 891 F.2d 439, 443 (2d Cir.1989), *vacated on other grounds,* 497 U.S. 543, 110 S.Ct. 2995, 111 L.Ed.2d 439 (1990)). Accordingly, in the instant case, as the state court addressed petitioner's *Batson* claim on the merits,[5] the Court will give deference to its determination that there was no constitutional violation. Specifically, since there is no dispute that the state court applied the correct legal rule in this case, the "unreasonable application" clause applies. *Williams,* 529 U.S. at 406–07, 120 S.Ct. 1495 (a state court's decision "involves the unreasonable application of [the Supreme Court's] precedent if the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case").

■ An "unreasonable" application is one that is "objectively unreasonable," not one that is simply incorrect. *Id.* at 409–11, 120 S.Ct. 1495; *see Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) ("[A] state court decision must be not only erroneous but also unreasonable.") The Second Circuit has cautioned, however, that although "[s]ome increment of incorrectness beyond error is required," the increment "need not be great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" *Francis S.,* 221 F.3d at 111 (quoting *Matteo v. Superintendent, SCI*

---

5. Although the Second Circuit has not decided what specifically must be articulated by the state court to meet AEDPA's requirement that the federal claim be "adjudicated on the merits," *see Washington v. Schriver,* 255 F.3d 45, 55 (2d Cir.2001) (amended op.), in this case, petitioner's *Batson* claim was plainly addressed on the merits. The Appellate Division cited and relied on *Batson* in its opinion denying petitioner's direct appeal. Likewise, although the trial judge did not explicitly mention *Batson,* the record shows that he was applying the *Batson* standard in concluding that defendant had not put forward a prima facie case of discrimination that would necessitate requiring the prosecution to explain its peremptory challenges.

*Albion,* 171 F.3d 877, 889 (3d Cir.1999) (en banc)).

## II. *The Batson Claim*

■ Petitioner contends that he was denied his equal protection right to a jury selected free of racial discrimination because the trial court improperly applied *Batson*'s three-step process for assessing an allegedly improper peremptory challenge. Under *Batson:* (1) the defendant must first make a prima facie showing that the prosecutor has exercised a peremptory challenge on the basis of race; (2) if such a showing has been made, the burden shifts to the prosecution to come forward with a race-neutral explanation for striking the potential juror; (3) and finally, the court must determine whether the defendant has carried his burden of proving purposeful discrimination. *Batson,* 476 U.S. at 96–98, 106 S.Ct. 1712; *Purkett v. Elem,* 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam); *Jordan v. Lefevre,* 206 F.3d 196, 200 (2d Cir.2000). In this case, the state court concluded that Collado had not made out a prima facie case of racial discrimination, and therefore did not require the prosecution to put forward race neutral explanations for its challenges.

■ In order to establish a prima facie case of racial discrimination, the defendant must show: (1) that he is a member of a cognizable racial group;[6] (2) that the prosecution has exercised peremptory challenges to remove from the venire prospective jurors of the defendant's race; and (3) that such facts and other relevant circumstances raise an inference that the prosecution used peremptory challenges to exclude veniremen from the jury on account of their race. *Batson,* 476 U.S. at

96, 106 S.Ct. 1712. A prima facie showing may be made "solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Id.*

■ There is, however, "no magic number of challenged jurors" that will suffice to make out a prima facie *Batson* violation. *Turner v. Marshall,* 63 F.3d 807, 812 (9th Cir.1995) (quoting *United States v. Chinchilla,* 874 F.2d 695, 698 (9th Cir.1989)), *overruled on other grounds, Tolbert v. Page,* 182 F.3d 677 (9th Cir.1999) (en banc). In the Second Circuit, reference must instead be made to a "multi-factor analysis." *Tankleff v. Senkowski,* 135 F.3d 235, 249 (2d Cir.1998); *see also Barnes v. Anderson,* 202 F.3d 150, 155 (2d Cir.1999) ("[A] trial judge has 'broad latitude to consider the totality of the circumstances when determining whether a defendant has raised an inference of discrimination.'") (quoting *United States v. Diaz,* 176 F.3d 52, 76 (2d Cir.1999)) (in turn quoting *United States v. Stavroulakis,* 952 F.2d 686, 696 (2d Cir.1992)). In particular, courts in this Circuit are to consider:

> how many members of the cognizable racial group are in the venire panel from which the petit jury is chosen, the pattern of strikes against racial group jurors in the particular venire, the prosecutor's statements and questions during selection, as well as any other relevant circumstances.

*Tankleff,* 135 F.3d at 249 (citing cases); *see also Batson,* 476 U.S. at 96, 106 S.Ct. 1712 (trial court should examine "all relevant circumstances," including, but not limited to, a "pattern" of strikes against certain jurors and the prosecutor's questions and statements during voir dire).

---

**6.** The Supreme Court has since effectively eliminated this requirement. *See Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411, (1991) (holding that criminal defendant whose race differs from that of excluded jurors can raise third-party equal protection challenge to peremptory challenges).

Here, counsel initially rested his *Batson* challenge on the conclusory allegations that "the People have been challenging peremptorily just about all Hispanic surname[d] individuals" and that the "majority of [the prosecution's] peremptory challenges" had been used to remove Hispanic surnamed individuals. (Tr. at 919–20.) Counsel subsequently put forward the names of seven individuals with allegedly Hispanic surnames against whom the prosecution had exercised peremptory challenges, and argued with respect to the last individual in particular, Ms. Restrepo, that she had "said absolutely nothing that would infer that she could not be a fair and impartial juror." (Tr. at 920.)

■ In the Court's opinion, it is not an unreasonable judgment to conclude that these allegations do not suffice to create an inference of racial bias in the prosecution's use of its peremptory challenges. As an initial matter, the defense failed to put forward any evidence that the removed members of the venire were in fact Hispanic, other than alleging that they had Hispanic-sounding surnames. Indeed, the trial court noted perfectly reasonably that at least two of the names sounded like Italian surnames.[7] Moreover, the defense failed to provide any information about the racial composition of the venire. Thus, the record is simply not clear "with respect to whether the ... jurors at issue were in fact Hispanic or whether they only had Hispanic-sounding last names, or whether those ... jurors were the only Hispanic jurors on the panel." *Millan*, 1999 WL 178790, at *5. Based on the current record, therefore, there is no basis for finding that

the state court's conclusion that petitioner failed to make out a prima facie case under *Batson* was in error, or was in any way unreasonable.

■ In any event, even accepting all of petitioner's allegations (which he has not shown to in fact be true), he still cannot demonstrate that the state court's ruling was either incorrect or "objectively unreasonable." At best petitioner's *Batson* claim rests solely on the ground that the prosecution had used about one-third of its peremptory challenges to remove prospective Hispanic jurors. Although the Second Circuit has noted in *United States v. Alvarado*, 923 F.2d 253, 256 (2d Cir.1991) (on remand), that "a rate of minority challenges significantly higher than the minority percentage of the venire would support a statistical inference of discrimination," the facts in petitioner's case do not necessarily compel a finding of a prima facie *Batson* violation.

In *Alvarado*, the court found a prima facie case of racial discrimination when the prosecution used 50 percent of its challenges (3 of 6) against minorities in the selection of the jury, and 57 percent (4 of 7) challenges in the selection of the jury plus alternates, and the minority population of the Eastern District of New York (used as a surrogate for the actual racial composition of the venire) was 29 percent. Similarly, in the recently-decided *Overton v. Newton*, 146 F.Supp.2d 267 (E.D.N.Y. 2001), the court, reviewing a habeas petition, concluded that it was unreasonable for the state court not to find a prima facie *Batson* violation when the prosecution

---

**7.** In fact, three of the challenged jurors appear to have arguably Italian surnames—Mr. Altamari, Ms. Cervone, and Corrado. If that were the case, then only four of the prosecution's eighteen peremptory challenges (about 22 percent) were used to remove Hispanic jurors. Since the Hispanic population of Queens County, from which the jury was drawn, is 25 percent, *see* U.S. Census Bureau, 2000 Census, State and County QuickFacts, *available at* http://quickfacts.census.gov/qfd/states/36/36081.html, such a challenge rate is not disproportional.

used 70 percent (7 of 10) of its strikes against black prospective jurors, when only 34 percent (11 of 32) of the prospective jurors in the venire whose races were known were black.

In contrast, the prosecution in this case at most used 39 percent (7 of 18) of its challenges to strike allegedly Hispanic jurors. As noted above, *see supra* n. 8, the Hispanic population of Queens County, from which the jury was drawn, is 25 percent. Absent any other indicia of racial bias, the disparity here between the rate of the prosecution's challenges of Hispanics and the racial composition of the venire is not sufficiently significant for this Court to find that the state court's decision was *per se* incorrect. Although another court might find a prima facie *Batson* violation based on the statistical disparity in petitioner's case, the state court did not necessarily err in concluding otherwise, and certainly did not advance an "objectively unreasonable" application of *Batson*. Accordingly, the Court will not disturb the state court's determination in this case.

### Conclusion

For the foregoing reasons, the petition is denied. Further, a certificate of appealability will not be issued because petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Tankleff*, 135 F.3d at 241. The Clerk of the Court is directed to close the case.

SO ORDERED.