07-1780-pr
Brown v. Alexander

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: April 16, 2008                    Decided: September 22, 2008)

Docket No. 07-1780-pr

---------------------------------------

TARKISHA BROWN,

Petitioner-Appellant,

- v -

GEORGE B. ALEXANDER, Chairman, New York State Division of Parole,
ANDREW CUOMO, Attorney General of the State of New York,

Respondents-Appellees.[*]

---------------------------------------

Before:   WINTER and SACK, Circuit Judges, and MURTHA, District
          Judge.[**]

Appeal from a judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, Judge) denying Tarkisha Brown's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner asserts that the New York state courts unreasonably applied Batson v. Kentucky, 476 U.S. 79 (1986), in concluding that she had not

---

[*]  Pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Chairman George B. Alexander and Attorney General Andrew Cuomo are automatically substituted for former Chairman Brion D. Travis and former Attorney General Eliot Spitzer, respectively, as respondents in this case.

[**]  The Honorable J. Garvan Murtha, of the United States District Court for the District of Vermont, sitting by designation.

presented a prima facie case of race discrimination with respect to jury selection at her criminal trial in state court.

Affirmed.

JEFFREY J. RESETARITS, Shearman & Sterling LLP (Seth M. Kean, of counsel), New York, NY, for Petitioner-Appellant.

RAFAEL A. CURBELO, Assistant District Attorney (Robert T. Johnson, Bronx County District Attorney, Joseph N. Ferdenzi, Nancy D. Killian, Assistant District Attorneys, of counsel), Bronx, NY, for Respondents-Appellees.

SACK, Circuit Judge:

Petitioner-Appellant Tarkisha Brown appeals from a judgment entered on March 30, 2007, in the United States District Court for the Southern District of New York (Jed S. Rakoff, Judge) denying her petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. She asserts that the state trial court unreasonably applied Batson v. Kentucky, 476 U.S. 79 (1986), when it ruled that she had not made out a prima facie case of race discrimination in jury selection during her state criminal-trial, and that the Appellate Division, First Department, People v. Brown, 276 A.D.2d 429, 715 N.Y.S.2d 18 (1st Dep't 2000), and the New York Court of Appeals, People v. Brown, 97 N.Y.2d 500, 507, 769 N.E.2d 1266, 1271, 743 N.Y.S.2d 374, 379 (2002), unreasonably applied Batson when they affirmed the trial court's decision. We conclude that because the New York courts reasonably determined that Brown had not made out a prima facie case, her post-conviction detention was not unlawful.

2

## BACKGROUND

In November 1997, a grand jury in Bronx County, New York, returned a three-count indictment against the petitioner. It included one count of criminal sale of a controlled substance in or near school grounds in violation of N.Y. Penal Law § 220.44(2). Voir dire of the jury took place in Supreme Court, Bronx County, before Justice Robert H. Straus, on January 6 and 7, 1999.

Jury selection was conducted using the "jury box system" provided by N.Y. C.P.L.R. § 270.15. Under the version that Justice Straus employed, a group of sixteen prospective jurors is randomly selected from the venire and interviewed. After the court has struck jurors for cause, the parties are permitted to examine the first twelve prospective jurors (i.e., a sufficient number to complete the jury). The State, and then the defendant, are allowed to exercise challenges for cause. Following the court's ruling on those challenges, the parties are afforded the opportunity to exercise one or more of the peremptory challenges allotted to them.[1] The remaining jurors from the original group of twelve are seated. The parties are then permitted to consider as many remaining jurors from the group of sixteen as would be necessary to fill the jury (e.g., if ten jurors are seated after consideration of the first twelve

---

[1] Each party was permitted fifteen peremptory challenges, based on the charges brought against Brown. N.Y. C.P.L.R. § 270.25(2)(b).

3

jurors, two more are taken under consideration). If a full jury is not seated from the first group of sixteen, a new group of sixteen prospective jurors is selected and the process is repeated until a sufficient number of jurors and alternates is seated. See generally People v. Webb, 187 Misc. 2d 451, 452-54, 722 N.Y.S.2d 349, 350-51 (Sup. Ct. Kings County 2001).

During the first round of voir dire for the petitioner's trial, the court selected a group of sixteen prospective jurors at random, and discharged one of them for cause. The court then permitted the parties to consider the first twelve of the fifteen remaining prospective jurors. Neither the State nor the petitioner exercised any challenges for cause. The State exercised five peremptory challenges, however, four of them against prospective jurors who were black. The petitioner exercised two peremptory challenges against prospective jurors whose race is not identified in the record. The five remaining persons were accepted to serve on the jury.

The court then considered the next three prospective jurors. The State sought to challenge one of them for cause, but after objection by the petitioner, the court denied the challenge. In response, the State used a peremptory challenge to strike this same prospective juror, who was black. The petitioner did not exercise any peremptory or for-cause challenges against the remaining two prospective jurors. They were then accepted to serve.

4

A second group of sixteen prospective jurors was then selected at random. After questioning, the court discharged four of them for cause and selected four additional prospective jurors as replacements. After questioning of the replacement jurors, one was discharged by the court for cause, again leaving fifteen prospective jurors in the box. The court considered the first five of them. Neither the State nor the petitioner challenged any of them for cause. The State exercised two peremptory challenges, however, both against prospective jurors who were black.

The petitioner then, for the first and only time, asserted a Batson challenge:

> Judge, I'm going to raise a Batson challenge against the prosecutor. I mean he never even asked Mr. Harley [one of the two black potential jurors just challenged] a question.

> I'm just looking here, he's exercised nine challenges, eight of them have been for African Americans if I'm not wrong. I might be wrong but I don't think I'm wrong.[2]

> We had some jurors yesterday he never spoke to; no jury experience, nothing against police officers and they were gone too.

> I can't help but discern a pattern here. Maybe I'm wrong. I would need some further information before I could be dissuaded from the fact that they're being eliminated here by use of peremptory challenge because of their color.

---

[2] Counsel was mistaken. At the point that she raised her Batson claim, the State had exercised eight peremptory challenges, seven of them against black members of the venire.

5

Transcript of Proceedings at 252, People v. Brown, No. 6815/97 (Sup. Ct. Bronx County Jan. 7, 1999).

The court responded:

[B]y my figures in the first group in the jury box there were nine people that appeared to me to be of African American descent and in this group there are six more, that's 15 and by my count he challenged 7 out of the 15. That's the count I have.

But beyond that the law requires for the Court to consider the challenge that there must be a rather specific objection with the utilization of facts and other relevant circumstances to create an inference of exclusion of a cognizable group.

Certainly African Americans are a cognizable group and certainly under certain circumstances a percentage of strikes can cause a court to find a pattern.

Id. at 252-53.

The petitioner's counsel interjected a lengthy explanation as to why four of the stricken jurors could have been fair. The trial court, apparently surprised, responded: "Wait just a minute. In the first group you're really concerned with four African American jurors peremptorily challenged[?]" Id. at 255. Counsel responded in the affirmative. Counsel then referred to further details about the stricken jurors.

After counsel had finished, the trial court responded,

Well, based on what you've said up to this point and what you have pointed out up to this point I'm not going to require the People to offer an explanation for their peremptory challenges. You can renew the application later [and] we'll see where the challenges go from this point on . . . .

6

*Id.* at 256-57.  Counsel for the petitioner again stated that the "jury selection [wa]s not fair." *Id.* at 257.  The judge responded, "I understand that, but based on right up to this point I do not find a pattern of purposeful exclusion that's sufficient to raise an inference of discrimination based on the numbers." *Id.*

The State then sought to make clear on the record that of the seven jurors chosen, three were black women.  The court acknowledged the statistic, but said, "It doesn't matter how many sworn jurors [there are.]  [I]t's not determinative[.]  [I]t's not dispositive. . . .  [A] *Batson* challenge can be made even as to one juror but I don't find the pattern." *Id.* at 258.

The remainder of *voir dire* moved along briskly.  The State exercised one additional peremptory challenge, that to an alternate juror; the petitioner exercised four.  Neither party challenged any jurors for cause.  The final five members of the jury were selected, as were three alternates.  The race, color, or ethnicity of these jurors is not reflected in the record.

The petitioner never renewed her *Batson* challenge.

The jury ultimately found the petitioner guilty of criminal sale of a controlled substance in or near school grounds under N.Y. Penal Law § 220.44(2).  Based on that verdict, the trial court rendered judgment on February 4, 1999, and sentenced the petitioner to an indeterminate prison term of two to six years.  The petitioner appealed her conviction on evidentiary

grounds,[3] and also challenged the trial court's denial of her Batson claim.

On October 26, 2000, the Appellate Division, First Department, unanimously affirmed the petitioner's judgment of conviction. People v. Brown, 276 A.D.2d 429, 715 N.Y.S.2d 18 (1st Dep't 2000). The defendant -- the petitioner here -- moved for leave to appeal the Appellate Division's decision to the New York Court of Appeals. The motion was granted. People v. Brown, 96 N.Y.2d 826, 754 N.E.2d 206, 729 N.Y.S.2d 446 (2001) (Kaye, C.J.).

On March 19, 2002, the New York Court of Appeals affirmed the order of the Appellate Division. People v. Brown, 97 N.Y.2d 500, 507, 769 N.E.2d 1266, 1271, 743 N.Y.S.2d 374, 379 (2002). As to the Batson issue, the Court of Appeals concluded, "[D]efendant's reliance on the People's removal of seven African-Americans through the exercise of eight peremptory challenges was inadequate, without more, to require the trial court to find a prima facie showing of discrimination." Id. at 508, 769 N.E.2d at 1271, 743 N.Y.S.2d at 379.

The petitioner then applied for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Southern District of New York. She claimed that the state trial court had unreasonably applied Batson when it ruled

---

[3] The evidentiary question, which was considered by the Appellate Division, and later the Court of Appeals, is not before us.

8

that she had not made out a prima facie case, and that the Appellate Division and Court of Appeals unreasonably applied Batson in affirming the trial court's decision.

In a report and recommendation dated January 12, 2007, United States Magistrate Judge Michael H. Dolinger concluded that the state courts had not unreasonably applied Batson in finding that the petitioner had failed to make out a prima facie case. Judge Dolinger therefore recommended that Brown's petition for a writ of habeas corpus be denied. In an Order dated March 28, 2007, the district court (Jed S. Rakoff, Judge) adopted the recommendation to dismiss the petition but grant a certificate of appealability under 28 U.S.C. § 2253(c)(1).

The petitioner, now on parole, appeals.

**DISCUSSION**

I. Standard of Review

"We review a district court's ruling on a petition for a writ of habeas corpus de novo." Overton v. Newton, 295 F.3d 270, 275 (2d Cir. 2002).

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, § 104, 110 Stat. 1214, 1219 (1996), a writ of habeas corpus may not issue for any claim adjudicated on the merits by a state court unless the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," id. § 2254(d)(1), or was "based on an unreasonable

9

determination of the facts in light of the evidence presented" in state court, id. § 2254(d)(2).

Under section 2254(d)(1), the statutory phrase "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000); Overton, 295 F.3d at 275-76 (quoting Williams). A state-court decision is "contrary to" clearly established federal law as determined by the Supreme Court if the state court's conclusion on a question of law is "opposite" to that of the Supreme Court or if the state court decides a case differently than the Supreme Court's decision "on a set of materially indistinguishable facts." Williams, 529 U.S. at 413 (2000); Overton, 295 F.3d at 275 (quoting Williams). A state-court decision "involves an unreasonable application of" clearly established federal law as determined by the Supreme Court if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Williams, 529 U.S. at 413; Overton, 295 F.3d at 275 (quoting Williams). "An unreasonable application of federal law is different from an incorrect or erroneous application of federal law." Williams, 529 U.S. at 412; Overton, 295 F.3d at 277 (quoting Williams). Interpreting Williams, and by extension section 2254(d)(1), we have observed that the

10

"unreasonable application" standard "falls somewhere between merely erroneous and unreasonable to all reasonable jurists." Id. at 277 (internal quotation marks and citation omitted). Although "[s]ome increment of incorrectness beyond error is required, . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Id. (internal quotation marks and citation omitted).

Finally, under section 2254(d)(2), a state court's findings of fact are "presumed to be correct." The habeas petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e); see Overton, 295 F.3d at 275 (quoting section 2254(e)).

## II. Clearly Established Federal Law: Batson and Its Progeny

Batson v. Kentucky, 476 U.S. 79 (1986), established a three-step burden-shifting mechanism for evaluating allegations of race discrimination during jury selection at a criminal trial. At the first stage of the inquiry, the defendant must establish a "prima facie" case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." Id. at 93-94. Once the defendant has made out such a prima facie case, the burden shifts to the State to provide a race-neutral explanation for its peremptory strikes. Id. at 97. Finally, the trial court must determine whether the defendant has established

11

purposeful discrimination, id., in which case the selection process was a violation of the Equal Protection Clause of the Fourteenth Amendment.

The Supreme Court did not establish a bright-line rule for what constitutes such a prima facie case. Instead, the Court instructed trial judges to consider whether "all relevant circumstances" and facts before them give rise to an inference of discrimination. Id. at 96-97. Batson did indicate that a pattern of strikes against African-American jurors may give rise to such an inference, and that the prosecutor's questions and statements might also support or refute such an inference. Id. at 97. Ultimately, though, Batson left substantial discretion in the hands of the trial court, expressing "confidence that trial judges, experienced in supervising voir dire, w[ould] be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges create[d] a prima facie case of discrimination against black jurors." Id.

The Supreme Court recently reiterated that it "did not intend the first step [in the Batson inquiry] to be . . . onerous." Johnson v. California, 545 U.S. 162, 170 (2005). "[A] prima facie case of discrimination can be made out by offering a wide variety of evidence, so long as the sum of the proffered facts gives 'rise to an inference of discriminatory purpose.'" Id. at 169 (quoting Batson, 476 U.S. at 94) (footnote omitted). The Court also restated the principle that a defendant is not

12

"require[d]" to "prove[] discrimination" at the prima facie stage. Id. at 169-70.

This court has put a further gloss on what constitutes a prima facie case under Batson, and what constitutes an unreasonable application of Batson and its progeny. We have noted that "under Batson and its progeny, striking even a single juror for a discriminatory purpose is unconstitutional." Walker v. Girdich, 410 F.3d 120, 123 (2d Cir. 2005). And we have said that we have "no doubt that statistics, alone and without more, can, in appropriate circumstances, be sufficient to establish the requisite prima facie showing." Overton, 295 F.3d at 278-79 (2d Cir. 2002); see also Tankleff v. Senkowski, 135 F.3d 235, 249 (2d Cir. 1998) ("[T]he fact that the government tried to strike the only three blacks who were on the panel constitutes a sufficiently dramatic pattern of actions to make out a prima facie case."). We have made clear, however, that "[o]nly a rate of minority challenges significantly higher than the minority percentage of the venire would support a statistical inference of discrimination." United States v. Alvarado, 923 F.2d 253, 255-56 (2d Cir. 1991) (finding that "a challenge rate nearly twice the likely minority percentage of the venire strongly supports a prima facie case under Batson"). We have also required that statistical arguments be based on a well-developed factual record. Such a record

would likely include evidence such as the composition of the venire, the adversary's use of peremptory challenges, the race of the

13

potential jurors stricken, and a clear indication as to which strikes were challenged when and on what ground, and which strikes were cited to the trial court as evidence of a discriminatory intent.

Sorto v. Herbert, 497 F.3d 163, 171-72 (2d Cir. 2007).

Although we have embraced the use of statistics, we have also indicated that, in every case, "an assessment of the sufficiency of a prima facie showing in the Batson analysis should take into consideration 'all relevant circumstances' including, but not restricted to, the 'pattern' of strikes." Harris v. Kuhlmann, 346 F.3d 330, 345 (2d Cir. 2003). This comports with our understanding that "Batson must be read as not only prohibiting certain specific actions, but also as creating a broad standard or principle that the courts must, in reason, follow." Overton, 295 F.3d at 278.

"The discrimination condemned by Batson need not be as extensive as numerically possible." Alvarado, 923 F.2d at 256. "A prosecutor may not avoid the Batson obligation to provide race-neutral explanations for what appears to be a statistically significant pattern of racial peremptory challenges simply by forgoing the opportunity to use all of his challenges against minorities." Id. Thus, while the presence of one or more black jurors "might tend to rebut an inference [drawn by the trial court in connection with the defendant's attempt to establish a prima facie case] that the prosecutor used his peremptory strikes in a discriminatory manner, . . . this fact alone [i]s [not]

14

sufficient to refute an otherwise-appropriate inference [of discrimination]." Harris, 346 F.3d at 346.

III. The New York State Court Decisions.

Based on principles established by Batson and its progeny, and by AEDPA and the case law interpreting it, we agree with the conclusion of the district court that a writ of habeas corpus was not warranted here. The state-court decisions were not "contrary to, [and did not] involve[] an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States," id. § 2254(d)(1), nor were they "based on an unreasonable determination of the facts in light of the evidence presented" in the trial court, id. § 2254(d)(2).

According to the trial court, at the time the petitioner raised her Batson claim, the totality of the relevant facts did not give rise to an inference of discrimination. The court "d[id] not [at that time] find a pattern of purposeful exclusion . . . sufficient to raise an inference of discrimination based on the numbers." Transcript of Proceedings at 257, People v. Brown, No. 6815/97 (Sup. Ct. Bronx County Jan. 7, 1999). The trial court's conclusion in this regard hinged primarily on the fact that the Batson challenge was lodged relatively early in the jury selection process. The court stated:

> [B]ased on what [the defendant] said up to
> this point and what you have pointed out up
> to this point I'm not going to require the

15

People to offer an explanation for their peremptory challenges.  You can renew the application later [and] we'll see where the challenges go from this point on.

Id.  We have "held, on habeas review, that a state court does not act unreasonably where it denies a Batson challenge early in the jury selection process."  Sorto, 497 F.3d at 170.  It is not ordinarily unreasonable for a state court to conclude that a petitioner has not made out a prima facie case when she raises a Batson challenge "before jury selection [i]s completed and before the . . . facts [a]re even fully established on the record."  Overton, 295 F.3d at 279.  "The need to examine statistical disparities may commend a wait-and-see approach," Sorto, 497 F.3d at 170, and the trial court's "wait-and-see approach" here was not unreasonable.

The Appellate Division affirmed the trial court's Batson ruling principally on the grounds that the "[d]efendant's statistical claim regarding the prosecutor's allegedly disproportionate use of peremptory strikes was insufficient to support a prima facie showing of purposeful discrimination, particularly in light of the racial makeup of the panel of prospective jurors."  People v. Brown, 276 A.D.2d 429, 429-30, 715 N.Y.S.2d 18, 19 (1st Dep't 2000).  It was not unreasonable for the Appellate Division to conclude that at the time petitioner moved under Batson for the State to articulate a race-neutral explanation for its peremptory challenges, the "rate of minority challenges [was not] significantly higher than the

16

minority percentage of the venire [thereby] support[ing] a statistical inference of discrimination." <u>Alvarado</u>, 923 F.2d at 255-56. And it was not unreasonable for the Appellate Division to conclude that the record before the trial court at the time of the challenge did not contain sufficient "evidence of a discriminatory intent" to justify the burden-shifting contemplated by <u>Batson</u>. <u>Sorto</u>, 497 F.3d at 171-72.

This is not to say that statistics alone can never establish a <u>prima facie</u> <u>Batson</u> claim prior to the completion of jury selection. There are likely circumstances in which the numbers of minority members struck, seated, and on the <u>venire</u> would justify <u>Batson</u>'s burden-shifting long before the last juror was seated. Nor do we mean to suggest that the petitioner here could not have established a <u>prima facie</u> case on a complete record in this case following a proper motion in the light of that record. A defendant may establish a <u>prima facie</u> case in any number of ways, the burden of establishing such a case is not onerous, and <u>Batson</u> left the trial court with substantial discretion to determine whether such a case was made. But here, petitioner's <u>Batson</u> challenge was denied as premature, she failed to renew the motion, and the status of jury selection at the time of the challenge did not insure that the statistics would establish a <u>prima facie</u> case irrespective of what happened during the jury selection process thereafter.

For the foregoing reasons, we conclude that the decision that a <u>prima facie</u> case had not been made out under

17

*Batson* at the time the *Batson* claim was asserted was not "contrary to, [n]or [did it] involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), nor was it "based on an unreasonable determination of the facts in light of the evidence presented" in state court, id. § 2254(d)(2).

The New York Court of Appeals affirmed. For the foregoing reasons, under the circumstances presented, that decision does not provide a basis for habeas relief in the federal courts.

We pause to note, nonetheless, that the Court of Appeals, in rejecting the petitioner's argument, commented:

> Defendant was explicitly invited by the trial court to articulate any facts and circumstances that would support a prima facie showing of discrimination. Instead of making a record comparing Caucasians accepted with similarly situated African-Americans challenged, or by establishing objective facts indicating that the prosecutor has challenged members of a particular racial group who might be expected to favor the prosecution because of their backgrounds, defense counsel responded that certain persons excused by prosecution peremptories had no prior jury service or had attended college and, thus, gave no indication that they could not be 'fair.' Based on the numbers and arguments presented, the trial court ruled that it did not find a discriminatory pattern. No further Batson objection was raised during the remainder of voir dire proceedings. Upon this record, we conclude that defendant's numerical argument was unsupported by factual assertions or comparisons that would serve as a basis for a

18

> prima facie case of impermissible discrimination.

Brown, 97 N.Y.2d at 508, 769 N.E.2d at 1271-72, 743 N.Y.S.2d at 380 (emphasis added; citations and internal quotation marks omitted).

We find the emphasized language in the court's opinion somewhat puzzling. It seems, at least at first blush, to be at odds with the Supreme Court's instruction that under Batson, "a prima facie case of discrimination can be made out by offering a wide variety of evidence, so long as the sum of the proffered facts gives rise to an inference of discriminatory purpose," Johnson, 545 U.S. at 170. The Supreme Court has not, for example, required that Batson challengers compare jurors struck with jurors seated, nor has it required that they show that jurors struck would have favored the prosecution.

But upon closer examination, we read the paragraph in question not to impose specific requirements on persons making Batson challenges. Instead, we think, it provides examples of evidence that "would [have] serve[d] as a basis for a prima facie case of impermissible discrimination" had it been offered. Brown, 97 N.Y.2d at 508, 769 N.E.2d at 1272, 743 N.Y.S.2d at 380. Thus understood, there is nothing in the statement that is contrary to clearly established federal law.

In any event, Supreme Court, Bronx County, the Appellate Division, and the Court of Appeals, all reached the conclusion that the petitioner had failed to make out a prima

19

facie case of race discrimination under Batson.  We agree with the district court that under the principles of both Batson and AEDPA, that conclusion will not support the grant of a habeas corpus petition.  We therefore affirm the judgment of the district court denying the application for such a writ.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is affirmed.