09-4039-pr
*Grigg v. Phillips*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 18th day of November, two thousand ten.

PRESENT:   ROGER J. MINER,
           CHESTER J. STRAUB,
           DEBRA ANN LIVINGSTON*,*
                        *Circuit Judges*.

───────────────────────────────

GARY GRIGG,
           *Petitioner-Appellant*,

   -v.-                                No. 09-4039-pr

WILLIAM PHILLIPS,
           *Respondent-Appellee*.

───────────────────────────────

                        PAULA SCHWARTZ FROME, Garden City, NY, *for Petitioner-Appellant*.

                        GUY ARCIDIACONO, Assistant District Attorney, *for* Thomas J. Spota, District Attorney of Suffolk County, Riverhead, NY, *for Respondent-Appellee*.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be **AFFIRMED**.

Petitioner-Appellant Gary Grigg ("Grigg"), who was convicted in a state court jury trial of

Robbery in the First Degree, appeals from a September 11, 2009, Memorandum and Order of the United States District Court for the Eastern District of New York (Seybert, *J.*), denying his petition for a writ of habeas corpus. We assume the parties' familiarity with the underlying facts and procedural history of the case.

In *Doyle v. Ohio*, 426 U.S. 610 (1976), the Supreme Court held that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." *Id.* at 619. The Court reasoned that "while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *See id.* at 618. In this case, Grigg's silence at the time of arrest and after his *Miranda* warnings was briefly referenced both in witness testimony and in the prosecutor's summation, in the context of an overall argument that Grigg's failure to give fingerprints or participate in a lineup evidenced his "consciousness of guilt." Grigg asserts that the district court correctly concluded that these references violated *Doyle*, but he argues that the district court wrongly found the error harmless in denying his habeas petition.

This Court reviews *de novo* the denial or grant of a petition for a writ of habeas corpus by the district court, reviewing any factual findings for clear error. *Garraway v. Phillips*, 591 F.3d 72, 75 (2d Cir. 2010). This Court has held, and the Respondent does not contest, that there need not be a contemporaneous objection to preserve a *Doyle* violation for appellate review, although a strategic

2

decision by defense counsel to embrace the use of the evidence in question may bar objection to it on appeal. *Hawkins v. LeFevre*, 758 F.2d 866, 873 (2d Cir. 1985). While Respondent argues such a strategic decision was made in this case, we note that Respondent failed to raise this argument in the district court, and, as a result, we do not consider it here. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008).

In reviewing Grigg's claim for habeas relief, we must under 28 U.S.C. § 2254(d) grant deference to the state court adjudication in this case, reversing it only if it "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* Grigg contends that here, the New York Appellate Division failed to adjudicate his *Doyle* violation claim on the merits, rejecting his appeal on this claim along with several others by saying that "[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit." *People v. Grigg*, 749 N.Y.S.2d 159, 160 (2d Dep't 2002). However, this Court has expressly held that "when a state court uses language such as '[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810 (2d Cir. 2000) (alteration in original). We have extended that analysis to hold that when under *Fama* we construe such an "either/or" decision not to impose a procedural bar, we also construe it as "on the merits for purposes of § 2254(d)." *Jimenez v. Walker*, 458 F.3d 130, 146 (2d Cir. 2006).

As a result, we must grant deference to the Appellate Division decision denying Grigg's

*Doyle* claim. "When applying § 2254(d)'s 'unreasonable application' clause to silent state-court opinions, we review outcomes, not reasoning." *Jimenez*, 458 F.3d at 147 (citing *Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001)). To find a state court decision to be an "unreasonable application" of federal law, we ask "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000). We have said that the standard that must be shown "falls somewhere between merely erroneous and unreasonable to all reasonable jurists." *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008) (quoting *Overton v. Newton*, 295 F.3d 270, 277 (2d Cir.2002)).

In this case, however, we need not consider whether the state court decision that no *Doyle* violation occurred in this case was objectively unreasonable, because any such violation that did occur was clearly harmless. Grigg objects to the government's elicitation of testimony at trial from the detective who arrested him that Grigg did not cooperate with the detective's requests: "I just requested that I wanted to talk to him. He didn't want to talk to me. He didn't want to sign anything. I read him his rights. He didn't want to sign that I read him his rights. He wouldn't let us print him or photograph him." Transcript, *People v. Grigg*, No. 1663-00, at 116 (N.Y. County Ct. April 23 & 26, 2001). He also objects to the prosecutor's reference to his post-arrest silence in the prosecutor's summation:

> Det. Beretta testified that he read Mr. Grigg his rights. Mr. Grigg then exercised his right to no longer speak to the police department which is respected by the police department. They no longer asked him questions after that. He refused to even sign, acknowledge his rights were even read to him. And then he refused to be printed.
> And as the Judge will instruct you, as I'm telling you now, that's conscious-ness of guilt. Ask yourself why. Why doesn't he want to give his prints? I submit he doesn't know whether we got his prints. But he refuses to cooperate.

4

*Id.* at 224-25.

The Supreme Court has addressed directly the proper standard of review in determining whether the occurrence of a *Doyle* error during a state court trial constitutes harmless error. In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Court adopted a harmless error standard for violations of this type drawn from the Court's decision in *Kotteakos v. United States*, 328 U.S. 750 (1946), asking "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 637 (quoting *Kotteakos*, 328 U.S. at 776).[1] Assessing harmless error outside the context of *Doyle* violations, we have identified four factors as particularly relevant to the analysis: "(1) the overall strength of the prosecution's case; (2) the prosecutor's conduct with respect to the improperly admitted evidence; (3) the importance of the wrongly admitted testimony; and (4) whether such evidence was cumulative of other properly admitted evidence." *Zappulla v. New York*, 391 F.3d 462, 468 (2d Cir. 2004). Of the four factors, "[t]he strength of the prosecution's case is probably the single most critical factor." *United States v. Reifler*, 446 F.3d 65, 87 (2d Cir. 2006) (alteration in original) (quoting *Latine v. Mann*, 25 F.3d 1162, 1167-68 (2d Cir.1994)).

While this Circuit has not applied the *Brecht* test specifically in the *Doyle* context, *Brecht* itself serves as a model. The case involved a man who had allegedly shot his brother-in-law and

---

[1] As we have noted in a previous case applying harmless error analysis in a habeas context, because *Brecht* preceded the enactment of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), there is some ambiguity as to whether, in order to grant a habeas petition, a court would have to find not just that an error was not harmless under *Brecht* but also that the state court's application of the federal harmless error standard, set out in *Chapman v. California*, 386 U.S. 18, 23 (1967), was "objectively unreasonable." *See Perkins v. Herbert*, 596 F.3d 161, 176 (2d Cir. 2010). Because the distinction does not affect the outcome of the analysis in this case, we need not decide the issue.

then drove off in his sister's car, before getting into an accident. *Brecht*, 507 U.S. at 623-24. When a police officer stopped to offer assistance, the defendant claimed that his sister already knew about the accident and had called a tow truck. The defendant then hitched a ride to another town. He was stopped by the police there, tried to conceal his identity, and was ultimately arrested. *Id.* at 624. At trial, the defendant claimed that the shooting had been accidental and that, after it had happened, the victim had disappeared, with the defendant allegedly driving off to find him. The State properly argued that this account was undermined by the fact that the defendant failed to get help for the victim, fled, lied to the police officer who helped him at the scene of his accident, and that he did not mention his claim of an accidental shooting to that first police officer, to the person who gave him a ride to a different town, or to the officers who ultimately arrested him. *Id.* at 624-25. However, over the defense counsel's objections, the prosecutor also asked a number of questions regarding whether the defendant had told anyone before trial that the shooting had been accidental and referred to this pre-trial silence several times in his closing argument. *Id.* at 625. The state further offered extrinsic evidence that undermined the defendant's story, as well as evidence of a motive on his part to harm the victim. *Id.*

In finding the error harmless, the Court focused on the following factors. First, the references to the defendant's post-*Miranda* silence were infrequent, "comprising less than two pages of the 900-page trial transcript in this case." *Id.* at 639. Further, given the State's numerous references to the defendant's silence prior to being administered a *Miranda* warning, which were permissible under *Doyle*, the impermissible references to post-*Miranda* silence were essentially cumulative. *Id.* Finally, the rest of the State's evidence "was, if not overwhelming, certainly

weighty." *Id.* This evidence included the extrinsic evidence that tended to discount the defendant's story of an accidental shooting, as well as other circumstantial evidence, including that regarding the defendant's motive.

In this case, the references to Grigg's pre-trial silence similarly made up a small part of the record and were largely cumulative of properly admitted evidence.[2] Out of a trial transcript of 277 pages, the disputed references make up two questions and responses on one page of the transcript, and a single reference in the summations of both the defense and prosecution. Moreover, in each case, the references to Grigg's silence, to the extent they were used as evidence of a failure to cooperate, were presented as minor examples along with Grigg's refusal to be fingerprinted and his failure to participate in a lineup that he had requested. In the trial judge's charge regarding what evidence the jury could use to draw an inference of consciousness of guilt, he mentioned as relevant evidence only the failure to cooperate with the fingerprinting and the lineup.

The other evidence in this case, while also perhaps not overwhelming, was certainly weighty. At trial, Rooney testified with a great degree of certainty that Grigg was the man who had mugged him. While Grigg argues that eyewitness testimony is suspect, Rooney's testimony regarding the attack he suffered presented a credible and detailed account of his mugging, one in which he had a very good opportunity to view his attacker. The identification presented was thus a strong one, even given the discrepancies highlighted by Grigg. The evidence allegedly introduced in violation of *Doyle* was, moreover, less important and the prosecution's conduct with respect to it less egregious

---

[2] In *United States v. Terry*, 702 F.2d 299 (2d Cir. 1983), this Court held that evidence of a defendant's refusal to supply palm prints, which the government had a right to obtain, was admissible as evidence of consciousness of guilt. *Id.* at 314. The same rationale would permit introduction of the failure to give prints and the failure to participate in a lineup in this case.

7

than in *Brecht*. Further, the evidence regarding Grigg's post-*Miranda* silence was cumulative of properly admitted evidence. As a result, we conclude that any *Doyle* violation that was committed was harmless error, and we affirm the district court's judgment on those grounds.

We have considered all of Petitioner's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk