**UNITED STATES of America**

v.

**Joseph J. SANTOPIETRO, et al.**

**Crim. No. 3:91CR00065(TFGD).**

United States District Court,
D. Connecticut.

Feb. 10, 1992.

---

Eileen McGann, West Redding, CT, for Jeffrey Santopietro.

## RULING ON BATSON CHALLENGE

DALY, District Judge.

Relying on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the defendants in this action have lodged an objection to the government's use of peremptory challenges at the February 4, 1992 jury selection in this criminal case. Specifically, defendants contend that the government's alleged use of seven of its nine challenges to strike minorities from the petit jury establishes a discriminatory, hence unlawful, purpose.

Although finding that the defendants have established a *prima facie* case of discriminatory use of peremptory challenges, the Court cannot conclude that defendants have carried their burden of proving purposeful discrimination on the government's part. Accordingly, for reasons more fully set forth below, the Court orders the government's challenges sustained over objection.

Holly B. Fitzsimmons and Amy B. Lederer, Asst. U.S. Attys., D. of Conn. (Albert S. Dabrowski, U.S. Atty.), Bridgeport, CT, for Government.

Hugh F. Keefe, Suzanne McAlpine (Lynch, Traub, Keefe & Errante) New Haven, CT, for Joseph J. Santopietro.

Paul Yamin, Waterbury, CT, for Perry Pisciotti.

Jules Sack, New York City, for Fred Giusti.

Joseph F. Keefe, David Moraghan (Smith, Keefe, Conti & Moraghan), Torrington, CT, for Jack Giacomi.

Richard Cramer, Wethersfield, CT, for Robert Giacomi.

Joseph Fazzano, Patrick Tomasiewicz, Hartford, CT, for Paul Vitarelli.

## BACKGROUND

Jury selection in this matter commenced on the morning of February 4, 1992, with 92 of 138 prospective jurors present.[1] Following challenges for cause, a basic pool of 50 names was drawn from the jury wheel. Of the 50 individuals making up the basic pool, 11, or 22 percent, had indicated on their jury qualification questionnaire that they were either Black or Hispanic.

Following the parties' subsequent exercise of peremptory challenges,[2] and at a side-bar conference with all counsel present, counsel for defendant Joseph J. Santopietro raised a *Batson* objection to the government's use of peremptory challenges. In support of the objection, counsel argued that the government used six of its nine available challenges to strike Black prospective jurors. All other defendants

---

1. Eighteen jurors summoned for jury selection did not appear in court at the specified hour; another 28 had been excused from attendance.

2. The government was afforded nine challenges, while the defense was collectively afforded twenty-three. Neither side waived any challenge.

joined in the objection and counsel for defendant Vitarelli added an allegation that the government had used one of its three other challenges to strike a prospective juror believed to be Hispanic. In total then, defendants charged that seven of the government's nine challenges were employed in a discriminatory fashion.

Responding to the claimed *Batson* violation, the lead Assistant United States Attorney prosecuting this matter volunteered the grounds for each alleged improper challenge.[3] As to each respective challenge, the Assistant made the following proffer:

he "has a fourth grade education and I believe he's had some problems with the Internal Revenue Service";

she is "young. She's twenty-years old and unemployed";

he "is also twenty-one. He's young and I have reason to believe doesn't pay child support so I don't think he's a responsible person";

"I believe she has problems with the Internal Revenue Service";

he "has prior liabilities to the Internal Revenue Service";

he "is unemployed but he used to work for the City of Danbury Highway Department and I'm concerned that he might be interested in the good old days of Jimmie Dyer";

she's "a state employee, she's also young and there were some people on my team who didn't like her attitude."

The Court reserved decision on defendants' challenge, and established a deadline of noon on February 6, 1992 for any written submissions on the question.

The jury selection process proceeded to its conclusion. Of the twelve prospective jurors chosen to sit on the case, three were Black and one Hispanic. Of the six alternates chosen, one was Black.

## DISCUSSION

■ In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause.

First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*Hernandez v. New York*, —— U.S. ——, ——, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) (citing *Batson*, 476 U.S. at 96–97, 97–98, 98, 106 S.Ct. at 1723, 1723, 1724); *see also United States v. Stavroulakis*, 952 F.2d 686, 695 (2d Cir. Jan. 3, 1992) (most recent Second Circuit application of the *Batson* test).[4]

■ In order to meet their initial burden of establishing a prima facie case of purposeful discrimination, defendants "must show, among other things, that the government's use of its peremptory challenges and any other relevant circumstances raise an inference that the government excluded prospective jurors on the basis of their race." *United States v. Montgomery*, 819 F.2d 847, 850–51 (8th Cir.1987). Such an inference may arise when such factors as patterns of strikes combine with race. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723

---

**3.** Although the Court has not had access to a written transcript of the colloquy at side bar, it has had the pertinent portions of the colloquy read by the Court Reporter for the purposes of ruling on defendants' challenge. The following exchange occurred immediately following the defendants' initial presentation:

The Court: Ms. Fitzsimmons?
AUSA Fitzsimmons: I'm happy to tell the Court why we challenged the people that we challenged.

The Court: Why don't you do that.

**4.** That all defendants in this case are white is of no moment in assessing the viability of their *Batson* claim. The Supreme Court has recently held that "race is irrelevant to a defendant's standing to object to the discriminatory use of peremptory challenges." *Powers v. Ohio*, —— U.S. ——, ——, 111 S.Ct. 1364, 1373, 113 L.Ed.2d 411 (1991).

("a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination"); *see, e.g., United States v. Biaggi,* 909 F.2d 662, 679 (2d Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991) (approving district court's ruling that the defendants had shown a sufficient pattern of government use of peremptory challenges against Hispanics and Italian–Americans to constitute a prima facie case of discrimination where the government "challenged four of the six Hispanics and five of the six Italian–Americans chosen for the regular jury, and two of the four Hispanics chosen for service as alternates").

■ Numbers alone may suffice to establish the requisite inference of discrimination. As the Second Circuit has explained, a "statistical inference of discrimination" may arise where the government's rate of minority challenges is "significantly higher" than the minority percentage of the venire. *United States v. Alvarado,* 923 F.2d 253, 255 (2d Cir.1991) (on remand).[5] Confronted with an episode where the government used four of its seven challenges to strike prospective minority jurors, for a minority challenge rate of 57 percent, but where the likely minority percentage of the venire was only 29 percent,[6] the Court found permissible a statistical inference of discrimination. Writing for a unanimous panel, Judge Newman stated that "[w]e think a challenge rate nearly twice the likely minority percentage of the

venire strongly supports a *prima facie* case under *Batson." Id.*

■ This Court is confronted with an even greater statistical disparity. The government's minority challenge rate in this case was 66.7 percent (six of nine challenges directed at minorities).[7] As noted above, the minority percentage in the basic pool was a substantially lower 22 percent. This Court is hard-pressed to find the defendants' threshold burden unsatisfied where, as here, the challenge rate is slightly more than three times the actual minority percentage of the basic pool. Employing the *Alvarado* analysis, the Court finds that the sheer weight of the numbers allows a permissible inference of discrimination on the government's part.

■ The Court now turns to consider whether the government's stated basis for its challenges is sufficient to rebut this prima facie showing—that is, whether the Assistant United States Attorney's proffered explanations were race-neutral, related to the particular case to be tried, and "clear and reasonably specific." *Batson,* 476 U.S. at 98 and n. 20, 106 S.Ct. at 1723 n. 20. As the Supreme Court has recently elaborated, "[a] neutral explanation ... means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez,* —— U.S. at ——, 111 S.Ct. at 1866.

---

**5.** The *Alvarado* Court reasoned that if the minority percentage of the venire was 50 percent, "it could be expected that a prosecutor, acting *without discriminatory intent,* would use 50 percent of his challenges against minorities." *Id.* (emphasis added). As such, it necessarily followed, in the Court's view, that only a rate of minority challenges significantly higher "than the minority percentage of the venire would support a statistical inference of discrimination." *Id.*

**6.** The record before the Court of Appeals bore no indication of the minority percentage of the venire in the district court. The Court relied instead, "as a surrogate for that figure", on the minority percentage of the judicial district from which the venire was drawn. *Id.* at 256.

**7.** For purposes of this calculation, indeed, for purposes of this Ruling, the Court has discounted defendants' claim that the government struck a prospective female Hispanic juror. *See* Mem. at 2 (describing the prospective juror as a "Hispanic woman"). The jury qualification questionnaire submitted by this individual simply cannot allow a finding that she is, in fact, Hispanic. In responding to question # 10 ("Race") on the questionnaire, the individual checked the column next to the word "White" and made no marking with respect to the query "[a]re you Hispanic? _____ Yes _____ No." Defendants, as such, have failed to satisfy their burden of demonstrating that this prospective juror is a member of a cognizable racial group. *See Batson,* 476 U.S. at 96, 106 S.Ct. at 1723.

The Court need not belabor any discussion of this aspect of the *Batson* test. The Assistant's explanations, grounded in considerations of age, education, employment status, and possible bias against an agency involved in the prosecution, were race-neutral, clearly articulated, and related to the length and complex nature of this seven-defendant, twenty-nine count, multi-conspiracy case.[8]

Finding that the government has put forth race-neutral explanations sufficient to rebut the defendants' prima facie showing, the Court turns to examine whether defendants have satisfied their ultimate burden of establishing purposeful discrimination on the government's part, i.e., of establishing that "the prosecutor struck a juror *because of the juror's race.*" *Id.* at ——, 111 S.Ct. at 1874 (O'Connor, J., concurring) (emphasis in original). The Court cannot find that defendants have satisfied their burden in this regard.

■ "In deciding the ultimate issue of discriminatory intent, the judicial officer is entitled to assess each explanation in light of all the other evidence relevant to prosecutorial intent.... As with most inquiries into state of mind, the ultimate determination depends on an aggregate assessment of all the circumstances." *United States v. Alvarado,* 951 F.2d 22, 26 (2d Cir.1991). The Court cannot find, under all the circumstances, that the explanations offered by the government in this case were pretextual, masking a discriminatory intent on its part. The Assistant United States Attorney did not hesitate in volunteering to defend the government's use of peremptory challenges immediately after the *Batson* challenge was lodged. Also significant is the fact that three of the government's challenges were directed at non-minority members of the basic pool, when the challenges could all have been exercised to strike remaining minorities. *See Alvarado,* 923 F.2d at 256 ("the prosecution's decision not to use an available challenge against minority veniremen is also a relevant circumstance to be weighed [in determining overall intent]").[9] Indeed, the actual minority percentage of the jury selected is higher even than the minority percentage of the basic pool. The Court also finds conspicuously absent any claimed motive, let alone any apparent motive, that would explain the government's alleged purposeful attempt to exclude minorities from the jury.

Consistent with the above, the Court holds that defendants have failed to meet their burden of establishing that the government purposefully discriminated against minorities in the exercise of its challenges.

SO ORDERED.

---

8. Of the twenty-nine counts, six allege violations of the federal tax laws.

9. The Court finds without merit defendants' suggestion, *see* Mem. in Supp. at 3, that one female juror, also "young", was not stricken because she was white. That juror indicated on her questionnaire that she was Hispanic. As such, the fact that the government did not strike her only serves to undermine defendants' claim.